**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MEGAN L. T., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 20-CV-00212-SH |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Megan L. T. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f.[1]  In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge.  For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

## I.    General Legal Standards and Standard of Review

Under the Social Security Act, a "disabled individual" is defined as someone who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).  A medically

---

[1] In her Complaint, Plaintiff states she also filed for benefits under Title II of the Act, 42 U.S.C. §§ 401-434.  (ECF No. 2 at 2.)  However, the record indicates that Title II is not at issue in this case. (R. 167.)

determinable impairment must be established by "objective medical evidence"—such as medical signs and laboratory findings—that derive from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. § 416.921; *see also* 20 C.F.R. §§ 416.902(a) (acceptable medical source), 416.913(a)(1) (objective medical evidence).  A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 1382c(a)(3)(B). Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920.[2]

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The "threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  It is more than a scintilla but means only "such relevant evidence as a reasonable mind

---

[2] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from severe medically determinable impairment(s); (3) whether the impairment is a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work.  20 C.F.R. § 416.920(a)(4)(i)-(v).  Generally, the claimant bears the burden of proof for the first four steps, assuming the impairment is not conclusively presumed to be disabling.  *Bowen v. Yuckert,* 482 U.S. 137, 146 (1987).  At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy.  20 C.F.R. § 416.960(c)(2).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).   The Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).   Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.   *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Procedural History and the ALJ's Decision

Plaintiff, then a 32-year-old female, protectively applied for Title XVI supplemental security income benefits on September 25, 2017, alleging disability onset on the date of application.   (R. 12, 20, 61, 167-175.)   Plaintiff claimed she was unable to work due to conditions including a cancerous brain tumor at 18 months of age, an organic brain disorder, and "inconsistent hesitations" lasting between three and five seconds.   (R. 189.)   Plaintiff's claim for benefits was denied initially and upon reconsideration.   (R. 94-97, 103-109.)   Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on June 18, 2019.   (R. 27-54.)   The ALJ issued a decision on August 6, 2019, denying benefits and finding Plaintiff not disabled because she was able to perform other work existing in the national economy.   (R. 9-21.)   The Appeals Council denied review (R. 1-6), and Plaintiff appealed (ECF No. 2).

In her decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of September 25, 2017.   (R. 14.)   At step two, the ALJ found that Plaintiff had the following severe impairments: (1) unspecified neurocognitive disorder and (2) unspecified anxiety disorder.   (*Id.*)   At step three, the ALJ found that Plaintiff's impairment had not met or equaled a listed impairment.   (R. 15-16.)

3

After evaluating the objective and opinion evidence, as well as the testimony of Plaintiff and her father, the ALJ concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels, but that she retains the following non-exertional limits:

> [T]he claimant can understand, remember, and carry out simple tasks with simple instructions in a routine work setting.   She can occasionally interact with coworkers, supervisors, and the general public.  She can tolerate occasional changes in work processes.  Work should not involve any exposure to unprotected heights or dangerous moving machinery or commercial driving.   A job should not involve production rate work or fast-paced work and should have no strict production quotas.  The claimant will be off task no more than 10% of the workday.

(R. 16-17.)  At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as an Automotive Counter Clerk.  (R. 16-20.)  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled work, such as Laundry Worker, Small Product Assembler, and Bakery Racker.  (R. 20-21.)  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles.  (R. 21.)  Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy.  (*Id.*)  Accordingly, the ALJ concluded Plaintiff was not disabled.

## III.    Issues

Plaintiff raises two related allegations of error in her challenge to the denial of benefits: (1) the ALJ failed to properly consider limitations articulated by Dr. Johna Kay Smasal,[3] which rendered the RFC legally flawed and unsupported by substantial evidence; and (2) the ALJ's

---

[3] While Plaintiff also references the 2009 findings of Dr. Carolyn Karr, Plaintiff does not argue that the ALJ should have found Dr. Karr's opinions to be persuasive or that he otherwise erred in failing to include limitations identified by Dr. Karr.  Rather, Plaintiff notes that the ALJ found Dr. Smasal's opinion to be consistent with certain findings by Dr. Karr (*see* R. 19) then repeatedly quotes a single line from Dr. Karr's evaluation.  (ECF No. 17 at 4-5, 9-10.)  In any event, the effect of Dr. Karr's findings is addressed herein.

reliance on an allegedly flawed RFC and on the VE's testimony resulted in an improper step-five analysis.  (ECF No. 17.)

## IV.   Analysis

### A.   The ALJ Properly Considered the Limitations Articulated by Dr. Smasal (and Dr. Karr).

Plaintiff argues the ALJ's evaluation of the limitations articulated by Dr. Smasal is flawed on three fronts.  First, Plaintiff contends the ALJ failed to adequately consider Dr. Smasal's statement that Plaintiff could potentially have "difficulty . . . adapting to the demands of a work environment."  (R. 302; ECF No. 17 at 6-7.)  Second, Plaintiff maintains the ALJ did not account for Dr. Smasal and Dr. Karr's statements regarding Plaintiff's struggles with concentration and attention.[4]  (ECF No. 17 at 8-9.)  Third, Plaintiff argues that the ALJ's improper weighing of these limitations resulted in a deficient RFC.  (*Id.* at 9.)  The undersigned disagrees.

As Plaintiff notes, it is well established that although the ALJ is not required to discuss each and every item of evidence, the record must show she *considered* all evidence.  *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  The ALJ is precluded from "ignor[ing] evidence that does not support his decision, especially when the evidence is 'significantly probative.'"  *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton*, 79 F.3d at 1009-10).  Similarly, the ALJ may not pick and choose through uncontradicted medical evidence.  *See e.g. Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

---

[4] Plaintiff incorrectly characterizes Dr. Smasal's "finding that Ms. Thomason had 'significant' difficulties with attention and concentration . . . ."  (ECF No. 17 at 9; *see also id.* at 5 & 10.) Rather, Dr. Smasal actually stated that Plaintiff "can be expected to experience difficulty with concentration" (R. 302) and later noted—without referencing concentration—that Plaintiff's "medical problems appear to be significant" (R. 303).  During her interview with Plaintiff, Dr. Smasal observed that Plaintiff's attention and concentration "fell within normal limits."  (R. 302.)

In the matter at hand, rather than picking and choosing which evidence she relied on, the ALJ adequately considered the record evidence to structure her RFC.  Plaintiff's claim that the ALJ failed to consider limitations articulated in Dr. Smasal's report—specifically Dr. Smasal's statement that Plaintiff can be expected to have "difficulty" adapting to the demands of a work environment—is inconsistent with the record.[5]  (*See* R. 15-16, 18-19.)  The ALJ utilized claimant's mental consultative examination ("CE") with Dr. Smasal in conjunction with Plaintiff's medical records and testimony to craft her RFC.  (*See* R. 16-19 (acknowledging that though Plaintiff was not currently in therapy, on medication, or receiving mental health treatment, her testing and MoCA[6] scores indicated problems with attention, concentration, and memory).)  Thereafter, the ALJ stated that the RFC for "unskilled work acknowledges the claimant's deficiencies and places her in a work situation that does not require skilled, fast-paced work with production quotas" and lets Plaintiff be "off task" up to 10% of the workday.  (R. 19.)  This, she allowed, was primarily because the results of Dr. Smasal's examination indicated Plaintiff suffered with problems in attention, concentration, and memory.  (*Id.*)  The ALJ also limited the RFC to only "occasional changes in work processes, which might be difficult [for Plaintiff] to process and adjust to."  (*Id.*)

Plaintiff argues, however, that the limitations in the RFC were not enough and that they "failed to include a corresponding limitation reflecting [Plaintiff's] difficulty adapting to a work environment . . . ."  (ECF No. 17 at 6.)  It is unclear, however, in what way the RFC is not specifically designed to curb Plaintiff's expected difficulty adapting to these demands.  Accounting for Plaintiff's limitations, the ALJ narrowed Plaintiff's residual capacity to "simple tasks," "simple

---

[5] The ALJ considered Dr. Smasal's medical opinions in accordance with 20 C.F.R. § 416.920c, which governs all claims file on or after March 27, 2017.  (R. 17.)

[6]  The MoCA, or Montreal Cognitive Assessment, is a cognitive screening tool. https://www.mocatest.org (last visited June 3, 2021).

instructions in a routine work setting," only "occasional[] interact[ion] with coworkers, supervisors, and the general public," only "occasional changes in work processes," "no[] … exposure to unprotected heights or dangerous moving machinery or commercial driving," no "production rate work or fast-paced work," no "strict production quotas," and off-task time up to 10% of the day.  (R. 16-17.[7])  Every one of these limitations is tailored toward the overarching goal of lessening Plaintiff's difficulty adapting to the demands of a work environment—one of Dr. Smasal's findings the ALJ specifically referenced (R. 19).  Thus, because the ALJ incorporated the evidence Plaintiff alleges she ignored, it cannot be reasonably claimed the ALJ neglected portions of the record that did not support her decision.

In the same way, Plaintiff maintains the ALJ failed to properly account for her difficulty with concentration and attention.  (ECF No. 17 at 5.)  Plaintiff submits that given the limitations identified by Dr. Smasal and Dr. Karr, Plaintiff would be off task greater than 10% of the day, as set forth in the RFC.  (*Id.*)  However, it is clear from the ALJ's opinion that she did evaluate Plaintiff's limitations with concentration and attention.

The ALJ considered both Dr. Smasal's and Dr. Karr's statements regarding Plaintiff's difficulty with attention in crafting the RFC.  (R. 18-19.)  The ALJ noted that testing performed both in 2009 and 2018 indicated problems "primarily with attention, concentration, and memory." (R. 19.)  The ALJ also found persuasive Dr. Smasal's medical opinions, which identified problems in concentration, persistence, and other areas, and which, the ALJ allowed, were consistent with Dr. Karr's findings of "relative strengths in general intellectual and achievement skills, . . . overall

---

[7] These limitations track the requirements set out in Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985) (requiring the ALJ determine the Plaintiff's ability to perform unskilled work in terms of their capacity to "understand, carry out, and remember simple instructions; [] respond appropriately to supervision, coworkers, and usual work situations; and [] deal with changes in a routine work setting.").

problem-solving, language, memory, and motor skill tasks" but of "[s]ignificant difficulties . . . in measures of attention and processing speed . . . ." (*Id.*)  As such, because the record evidence clearly established this limitation, the ALJ made it a focal point of her analysis, explaining her RFC as follows: "Due to problems with attention, concentration, and memory, the claimant can understand, remember, and carry out simple tasks with simple instructions in a routine work setting." (*Id.*)  The ALJ then continued to frame the RFC in terms of how Plaintiff's limitations with attention and concentration would affect her work-related functions.  (R. 19 ("A job should not involve production rate work or fast-paced work and should have no strict production quotas, due to problems with persistence, concentration, attention, and processing speed, which would make such work difficult.").)  Thus, the Court holds the ALJ properly came to her RFC, despite Plaintiff's alleged errors.

As it is apparent the limitations Plaintiff identifies as having not been incorporated in the RFC were in fact considered and utilized, all that is left is an argument that the ALJ improperly *weighed* the effect of the evidence.  A court, however, may neither reweigh evidence nor substitute its judgment for that of the Commissioner.  *Hackett*, 395 F.3d at 1172.  This is essentially what Plaintiff asks the Court to do when she disputes the ALJ's rationale behind finding that Plaintiff would be off task no more than 10% of the workday.

To avoid requesting the Court reweigh evidence, however, Plaintiff maintains that "[t]he problem with [the ALJ's] analysis is that the ALJ does not explain why the difficulties with processing and adjusting . . . as well as concentration and attention . . . result in [Plaintiff] only being off task for 10% of the workday." (ECF No. 17 at 8.)  Though it is true that a court may not, generally, accept post hoc efforts to salvage an ALJ's decision that cannot stand on its own, *Haga*, 482 F.3d at 1207–08, accepting such a rationale is not required in this case.  Adequate evidence

exists throughout the ALJ's opinion to support her finding that, pursuant to the RFC, Plaintiff will not be off task more than 10% of the day.

As the Court has already discussed the ALJ's treatment of the limitations Plaintiff flagged for review, it will not devote a great amount of time to walk through that same evidence again.  It is sufficient to note that the explanation Plaintiff calls for the ALJ to make regarding the claimant's off-task time is found in her RFC and, indeed, throughout her opinion.[8]  Plaintiff may be off task no more than 10% of the work day precisely because there are restrictions imposed on the type of work she can engage in (work involving "simple tasks," "simple instructions," "occasional" public interaction, "occasional changes in work processes," "no production rate[s]," no "fast-paced work," and no "production quotas.").  (R. 19.)  The Court's reading of this is not based on a post hoc rationalization.  It is simply drawn from the content of the RFC, which the ALJ explicitly states is limited due to Plaintiff's recognized impairments.  *Id.*  The RFC, therefore, is not legally flawed and—as shown above—is based on substantial evidence.

**B.**     **The ALJ's Step-Five Analysis was Proper.**

Plaintiff also takes issue with the ALJ's step-five analysis—specifically its use of an allegedly incomplete RFC and its reliance on purportedly flawed VE testimony.  (ECF 17 at 5-6, 9.)  The undersigned finds these arguments unavailing.

First, Plaintiff contends the ALJ's step-five analysis was deficient because it failed to incorporate "a proper, all-encompassing hypothetical to the VE which includes" the limitations Plaintiff claims were ignored in the RFC.  (*Id.* at 9.)  The Tenth Circuit has held that VE testimony "elicited by hypothetical questions that do not relate with precision to all of a claimant's

---

[8] Specifically, in her RFC, the ALJ limits Plaintiff to off task time of no more than 10% of the workday "for the same reasons listed above." Those reasons include the previously discussed limitations on type and pace of work so imposed due to Plaintiff's "problems [] with attention, concentration, and memory."  (R. 19.)

impairments cannot constitute substantial evidence . . . ." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quoting *Ekeland v. Bowen*, 899 F.2d 719, 722 (8th Cir.1990)); *cf. Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (holding that because the ALJ's "findings regarding the limited nature and effect of plaintiff's impairments . . . are adequately reflected in the ALJ's hypothetical inquiries to the vocational expert, the expert's testimony provided a proper basis for adverse determination of th[e] case" (citation omitted)).

As discussed previously, the RFC properly accounted for the limitations in the record, and the ALJ subsequently included those limitations in her hypothetical questions to the VE. Plaintiff's non-exertional limitations indicate struggles with attention, concentration, memory, processing, adjusting, and persisting. (R. 19, 67-72, 86-92, 285-287, 300-303, 367-374.) The ALJ used these limitations in her hypothetical to the VE:

> Q [ALJ]  . . . Let's assume a hypothetic individual of the same age and education as the claimant with the residual functional capacity to perform a full range of work with [the ability to] understand, remember and carry out simple tasks with simple instructions in a routine work setting; occasional interaction with co-workers, supervisors and the general public; occasional changes in work processes; no work involving any exposure to unprotected heights or dangerous moving machinery or commercial driving. . . . [and] no production rate work or fast-paced work and no strict production quotas.  Would those same jobs [a laundry worker, small product assembler, and bakery racker] remain?
>
> A [VE]  Yes, ma'am.

(R. 50-51.)  There is no need to remand so the ALJ can pose another hypothetical to the VE, as requested by Plaintiff.

Second, Plaintiff takes issue with the VE's testimony regarding off-task time and work absences.  (ECF 17 at 5-6, 9.)  At the hearing, the VE testified that an employee will not be able to maintain competitive employment if they are off task 15% of the time or greater.  (R. 51.)  The VE also testified the same would be true if the employee is absent more than one day a month. (*Id.*)  Plaintiff argues these statements are incongruent, mathematically erroneous, and result in an

improper RFC.  (ECF 17 at 5-6, 9.)  Particularly, Plaintiff notes that when extrapolated, either 10% or 15% off-task time every day would result in more than a day's worth of work missed monthly. (*Id.* at 6.)  This analysis, however, conflates the VE's testimony regarding off-task time with her testimony regarding absenteeism.  Being off task while at work is not the same thing as being absent from work, and they were not treated as equivalent by the VE in her expert testimony.

The Court, therefore, agrees with the Commissioner on this point, at least in part.  (*See* ECF 20 at 12.)  The Commissioner, however, argues the VE's testimony indicates that these two vocational factors together, "being absent from work more than one day per month, **and** being off task at work 15% or more of a workday" result in an inability to maintain competitive employment. (*Id.*)  The undersigned does not make a finding as to whether the VE in this case was testifying that both 15% off-task time daily, in addition to one absence per month, precluded competitive employment, or whether the VE intended the two factors to be separate, with one or the other resulting in an inability to retain employment.  Such a finding is not necessary.  It is enough that, pursuant to the VE's testimony and the ALJ's incorporation of such limitations in her RFC, the ALJ's disability determination is based on substantial evidence and not contrary to correct legal standards.  *See Lax*, 489 F.3d at 1084 ("We may not displace the agency's choice between two fairly conflicting views . . . ." (cleaned up)).

## V.     Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 3rd day of June, 2021.

**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**